## No. 24686.

THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO, AND BONDED SECURITY SERVICES, INC. *v.* LEONARD DELUE, D. J. SEBERN, T. W. RINKER AND TED P. RINKER D/B/A ARMORED MOTORS SERVICE, A PARTNERSHIP, AND THE CONTRACT CARRIERS' CONFERENCE, A COLORADO CORPORATION.

(486 P.2d 1050)

Decided July 12, 1971.      Rehearing denied August 3, 1971.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Robert E. Commins, Assistant, John E. Archibold, Assistant, for plaintiffs in error.

Herbert M. Boyle, for defendants in error Leonard DeLue, D. J. Sebern, T. W. Rinker and Ted P. Rinker d/b/a Armored Motors Service, a Partnership.

John J. Conway, for defendant in error The Contract Carriers' Conference, a Colorado Corporation.

*In Department.*

Opinion by Mr. Justice Hodges.

The single issue on this writ of error by the Public Utilities Commission (PUC) is whether or not existing private carriers are entitled to receive notice as a matter of right from the PUC of a hearing on an application for a permit to operate as a private carrier when there may be duplication or overlapping between the authority requested in the application and the authority of the existing private carriers.

The PUC in denying a petition to set aside its Decision

No. 71646 ruled that existing private carriers are not entitled to such notice. The district court upon review by certiorari reversed this ruling by the PUC. We hold that the PUC's ruling is correct and accordingly, we reverse the judgment of the district court.

In May of 1968, Bonded Security Services, Inc. made application to the PUC for a private contract carrier permit. Notice of hearing was given by the PUC to those common carriers whose certificated authority might be affected. After hearing in August 1968, the PUC by Decision No. 71646 granted the application and authorized the issuance of the permit to Bonded Security Services, Inc. In September 1968, Armored Motors Service and the Contract Carriers Conference (Conference), the defendants in error herein, petitioned the PUC to set aside Decision No. 71646 and to hold a new hearing. Their grounds for this request was that Armored Motors and the Conference were not given notice of the hearing on this application. On behalf of Armored Motors, it was pointed out that the PUC decision granted the applicant similar authority as had previously been granted to Armored Motors, and that its business might therefore be adversely affected by the new private carrier's permit. Their petition was denied as was their petition for reconsideration. They then sought review by certiorari in the district court which reversed the PUC and voided Decision No. 71646.

Armored Motors and the Conference claim that private carriers are constitutionally entitled to notice of a hearing before the PUC under the circumstances here. They also assert that the rules of the PUC and applicable Colorado statutes require that notice of a hearing on an application for a permit for private carrier authority be given to private carriers whose authority may be duplicated or overlapped by the authority requested in the application.

I.

[1, 2] It is clear that private carriers as permit hold-

ers, cannot claim the same character of property right as is possessed by a holder of a certificate of public convenience and necessity. A certificate holder must be afforded adequate notice and a right to be heard whenever its authority to serve under a certificate is affected, or may be affected, by any grant of authority by the PUC. *See* C.R.S. 1963, 115-5-1(2); *Town of Fountain v. Public Utilities Comm'n.*, 167 Colo. 302, 447 P.2d 527.

■ Similarly, when a property right is subject to direct and material infringement by an administrative action, the holder of the right is entitled to notice and hearing upon the matter, as a matter of procedural due process. *See Neely v. Bd. of Trustees, Policemen's and Firemen's Retirement System, City of Wichita*, 205 Kan. 780, 473 P.2d 72 (disability benefits denied without notice of hearing); *Checker, Inc. v. Public Service Comm'n.*, 84 Nev. 623, 446 P.2d 981 (common carrier taxicabs allocated by *ex parte* order without notice to common carriers); *McCarthy v. Coos Head Timber Co.*, 208 Ore. 371, 302 P.2d 238 (State Land Board leases tide and overflow lands without giving notice to holders of statutory preference right to lease or purchase the same lands).

■ In *DeLue v. Public Utilities Comm'n.*, 169 Colo. 159, 454 P.2d 939, this court specifically stated that a private carrier, as distinguished from a common carrier, has no obligation to serve the public and thus, *is not entitled to protection from competition*. A private carrier, sometimes called a contract carrier, provides service at its convenience and subject to the negotiation of a satisfactory agreement between the private carrier and its customer. If the contract is breached by the customer, it has a remedy in the form of an action for breach of contract against the customer. If the contract expires, it thereafter has no legal right to its customer's business, unless, of course, it and the customer renew the contract. This explanation of what a private carrier is acts to shed

light upon the reason why it must be concluded that the business of a private carrier is protected solely by the integrity of the contracts with its customers, and is not protected by law against the competition of other carriers. Therefore, since none of its legal interests or rights are affected by other carriers, which may be authorized to operate within its authorized area or commodity authority, there is no constitutional requirement of notice under these facts.

## II.

Similarly, we do not find that the present statutes or PUC rules require that notice be given to defendants in error in the circumstances of this case. It is well established that the Private Motor Carriers Act of 1931 [C.R.S. 1963, 115-11-1 *et seq.*] was enacted for the purpose of regulating any detrimental effect that private carriers might have upon common carrier operation. *DeLue v. Public Utilities, supra; McKay v. Public Utilities Comm'n.*, 104 Colo. 402, 91 P.2d 965. The constitutionality of the same Act was upheld in *Bushnell v. People,* 92 Colo. 174, 19 P.2d 197.

Keeping in mind that the granting of a private motor carrier permit gives the permit holder the right to serve in an authorized area, but not free from other competition, we look to the intent of C.R.S. 1963, 115-11-3(2) containing the notice provisions applicable to this case.

C.R.S. 1963, 115-11-3(2) reads as follows:

"(2) No application for [a private contract carrier] permit, nor for any extension, or enlargement of an existing permit, shall be granted by the commission until after a hearing, nor shall any such permit, nor any extension or enlargement thereof, be granted if the commission shall be of the opinion that the proposed operation of any·· *such private carrier will impair the efficient public service of any authorized motor vehicle common carrier* or ·carriers then adequately serving the same territory over the same general highway route or routes. The com-

mission shall give written *notice of such hearing to all persons, firms or corporations interested in or affected by the issuance of such permit* at least ten days prior to the time fixed for such hearing. No existing permit shall be transferred until the financial standing of the transferee is established to the satisfaction of the commission." (Emphasis added.)

■ In the light of our discussion above, we hold that the clear intent of the foregoing section is that "[p]ersons, firms or corporations interested in or affected by the issuance of such permit. . . ." does not include other private carriers.

Defendants in error argue that since this court in *DeLue v. Public Utilities Comm'n., supra,* stated that private carriers might intervene in PUC proceedings, at the discretion of the PUC then it follows that they must be given notice of these proceedings so that they can invoke the discretion of the PUC. We can imagine many instances in administrative proceedings where the "would be" intervenors have not been afforded notice. Intervention is a matter of standing which is an entirely separate question from the matter of required notice. Defendants in error have ample opportunity to inspect the public records of the PUC in order to apprise themselves of the applications for permits or certificates before the PUC.

We are not persuaded by the Florida cases cited by defendants in error. *City Cab Co. v. Mayo,* 212 So. 2d 636, and *Florida v. King,* 93 So. 2d 368. These cases involve circumstances similar to the ones involved in this case, but the cases are easily distinguishable on the basis of the statutory differences. The applicable Florida statute [F.S. §323.03 (2), F.S.A.] provides that notice shall be provided to all *motor carriers* in the comparable Florida permit proceeding. However, the definition of *"motor carriers"* [F.S. 323.01(7), F.S.A.] specifically includes common carriers, contract carriers and carriers for hire.

324

## III.

Finally, we do not find that the Administrative Code, C.R.S. 1963, 3-16-1 *et seq.*, as amended, or the rules promulgated by the PUC, require that defendants in error be afforded notice in the instant case.

The judgment of the district court is reversed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE GROVES and MR. JUSTICE LEE concur.